UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL HOUSEMAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>STU SHERMAN, et al.,<br><br>　　　　Defendants. | Case No.: 1:17-cv-01617-AWI-SAB (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT, OR NOTIFY THE COURT OF INTENT TO PROCEED ON COGNIZABLE CLAIMS<br><br>[ECF No. 1]<br><br>**THIRTY-DAY DEADLINE** |

**I.**

**INTRODUCTION**

Plaintiff Randall Houseman is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.

Currently before the Court is Plaintiff's complaint, filed on December 5, 2017. (ECF No. 1.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail to state a claim on which relief may be granted," or that "seek

1

monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

Notwithstanding any filing fee, the district court must perform a preliminary screening and must dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitations ("CDCR"), currently incarcerated at Mule Creek State Prison. The events at issue took place at California Substance Abuse Treatment Facility ("SATF") in Corcoran, California, at the Delta Facility Yard. Plaintiff names the following defendants: (1) Warden Stu Sherman; (2) Correctional Officer J. Odle; (3) Correctional Officer E. Hennesay; (4) Correctional Lieutenant A. Iversen; (5) Nurse Practitioner L. Merritt; (6) Chief Medical Officer Godwin Ugweze; (7) Dr. Jonathan Ashby; (8) Physician's Assistant Tiggs-Brown; and (9) Correctional Sergeant Martinsun.

Plaintiff alleges as follows:[1] Since September 9, 2013, Plaintiff has been permanently mobility impaired and classified as ADA lower tier, lower bunk. On September 10, 2013, it was discovered via a XR cervical spine LTD taken that Plaintiff had bone spurring and degenerative disc disease at C6 and C7, and narrowing of the spinal canal. Since that finding, Plaintiff has complained to his personal care provider on numerous occasions of cervical pain in his neck and numbness and tingling throughout his upper body, on September 4, 2013, November 20, 2013, and May 19, 2014.

On July 14, 2015, Dr. Jonathan Ashby filed a 7410, 128-C3, and an 1845. The 7410 comprehensive accommodation chrono box (a) was checked "unrestricted," the 128-C3 medical classification chrono marked "(UHR) 'PERMANENT' bottom bunk, lower tier, (DPM)." (Compl. 5.) The 1845 (DPPV) Disability Placement Program Verification, sec (a) box checked "NO DISABILITY." (Id.) Dr. Ashby knew of the risk to Plaintiff's health and safety and disregarded an excessive risk because he knew the risk was obvious and was aware of it, and also that there was a strong likelihood of injury. Dr. Ashby was deliberately indifferent, and Plaintiff was forced out of his current cell with threats and assault, even though he was still classified as permanently lower bunk, lower tier status on his 128-C3 medical chrono dated July 14, 2015

---

[1] Plaintiff's allegations are arranged chronologically for ease of assessment.

3

DPM, ADA status permanently. After being on a bottom bunk with a cane, walker, brace/leg, Plaintiff was moved and placed on an upper bunk in a different building.

On December 28, 2015, Plaintiff was approached by Officer Hennesay and his partner Odle on the floor of post D-3 3rd watch at cell D3-113L, at approximately 1930 hours. The officers said that Plaintiff and his celly were moving because they were DDP1 blk clear. Plaintiff informed Officers Hennesay and Odle that he was already in a lower bunk, "I'm ADA high risk medical, with a cane, walker, shoes, brace-leg." (Compl. 6.) He stated "(MOVE) or be written-up via the 115 RVR disciplinary process." (Id.) Then he stated, "I work in D-1 DDP1 blk," which to Plaintiff and his cellmate was a threat of more reprisals if they did not move and denied. Plaintiff asked to speak to a lieutenant or sergeant on duty. He stated, "That's who done the move and it's already in the computer." (Id.) Officer Hennesay then walked to the officer door and made a hand gesture as to move and be celled in 1-blk cell 1-126 upper bunk.

After 72 hours, Plaintiff pleaded with and asked medical and custody to rehouse his bed situation. No help.

On December 31, 2015, Plaintiff fell from five to six feet, head first, into a metal locker and then to the concrete floor, where he was unconscious. He was then rushed to the outside hospital with a broken neck, herniated spinal cord, and ultimately had to undergo surgery for C6, 67 cord compression/diskectomy, and fusion with allograft and titanium uniplate implanted.

When Plaintiff fell, it caused him to have a swollen spinal cord, herniated C-5, C-6, and compressed his spinal cord on the inside of his spinal canal, requiring surgery to keep him from being paralyzed for the rest of his life. Plaintiff still could possibly die from this life-threatening injury if the plate and screws fail or break at any time.

All chronos, DPM cell door signs, program ID card, medical chronos, all clearly show inmate is lower bunk, lower tier status permanently. Plaintiff informed the officers by verbal, written and visual medical chronos that this couldn't be done, with negative results. These officers failed in their duty and ignored an obvious and serious danger, and caused Plaintiff an unreasonable risk of serious harm.

///

On January 24, 2016, Plaintiff filed a staff complaint on the officers who were responsible for his cell move and ultimately his injuries caused by their deliberate indifference. After Plaintiff filed his complaint, he has been harassed in many forms and ways. On January 19, 2016, after returning from the hospital, all of his personal property was seized by the CDCR staff, keeping him from his legal work and documents (personal documents that connected them to his incident) of December 31, 2015. Since then, Plaintiff has had other incidents of humiliation, harassed repeatedly via being strip-searched outside by the same officers who were involved with the staff complaint and the false 115 RVR report of June 6, 2016, authored by Lieutenant Iversen, who was the officer who investigated the same staff complaint against his own officers previously (May 11, 2016), ref staff complaint Log # SATF-16-00505, and also (March 12, 2016).

On April 5, 2016, during a clinician's contact, Plaintiff told them about the harassment going on, and prior to that contact, he was repeatedly over at least three day straight, the officers would come in the cell block and kick his cell door telling him to pack his stuff because he was moving. But this wasn't the case at all, they would make him pack up his whole cell and then would say, "'Sorry' your move was cancelled!" (Compl. 7.) On April 15, 2016, harassment was again reported to mental health staff.

On June 6, 2016, Plaintiff was found guilty of fabricated dirty U/A test specifically diluted, Log # SATF-16-03591, Appeal Decision Case No. 1709078.

On October 5, 2017, Plaintiff was placed in a cage along with other inmates in front of women staff, and strip-searched and left naked for ten minutes while the women staff walked back and forth in the hallway in D-Facility medical SATF.

Plaintiff brings a claim for violation of the Eighth Amendment for deliberate indifference to medical care, for Fourteenth Amendment violation of the Equal Protection Clause, and for retaliation in violation of his First Amendment. Plaintiff seeks a declaratory judgment, a preliminary injunction ordering Defendants to cease harassing him and to be free from retaliation, compensatory and punitive damages, a jury trial, costs of suit and any other relief deemed just, proper, and equitable.

///

**III.**

**DISCUSSION**

**A.     Supervisory Liability**

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on *respondeat superior*, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow, 681 F.3d at 989) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff has named Warden Stu Sherman and Chief Medical Officer Ugweze in this action as defendants, apparently solely based on their supervisory roles. Plaintiff has made no factual allegations that they were personally involved in a violation of his rights. As discussed, Plaintiff cannot bring any claim based solely on a prison official's supervisory role.

**B.     Deliberate Indifference**

Plaintiff asserts that Defendant Ashby knew of a risk to his health and safety and disregarded it, and as a result he was forced from his lower bunk to an upper bunk and fell, resulting in injuries. Plaintiff further alleges that Officers Hennesay and Odle ignored everything that was put in place to ensure that people are not subjected to serious harm, and he ended up with a broken neck, herniated spinal cord, because they acted with deliberate indifference.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials, among other things, a duty to "take reasonable measures to guarantee the safety of the

inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1991) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). An inmate's Eighth Amendment rights are violated by a prison official if that official exposes an inmate to a "substantial risk of serious harm," while displaying "deliberate indifference" to that risk. Farmer, 511 U.S. at 834.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id., at 847.

Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Regarding Dr. Ashby, Plaintiff makes conclusory allegations that Dr. Ashby new of a risk and was deliberately indifferent, but has not alleged facts showing the doctor's knowledge or awareness and disregard of that risk. Plaintiff only allege that Dr. Ashby filed three forms, two of which had boxes checked which did not indicate a disability or restriction, and one of which indicated that Plaintiff permanently was assigned to a bottom bunk, lower tier, as DPM. At most, the Court may infer some type of negligence from the inconsistent forms, which does not satisfy the standards for an Eighth Amendment claim.

Regarding Officers Hennesay and Odle, Plaintiff has pleaded that he made them aware of a serious risk in putting him in an upper bunk, by informing them that he was ADA high risk medical and required a cane, walker, shoes and a brace leg. He further alleges that he informed the officers through his chronos, DPM cell door signs, program ID card, medical chronos, that he required a lower bunk, lower tier status. These officers nevertheless moved him to an upper bunk

in a different building. Liberally construed, Plaintiff has sufficiently pleaded a claim for deliberate indifference to a serious risk of safety against Officers Hennesay and Odle.

### C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). The second requires that Plaintiff have received disparate treatment compared to other similarly situated inmates without a rational basis for that difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). For either theory, Plaintiff must show evidence of discriminatory intent. See Washington v. Davis, 426 U.S. 229, 239-40 (1976); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).

In Plaintiff's claim form, where he states he is bringing a Fourteenth Amendment Equal Protection claim, he checked boxes indicating "retaliation" as the issue involved. It is not clear against whom Plaintiff intends to bring an Equal Protection claim, or on what basis. His allegations of retaliation fall under the First Amendment, and are addressed further below.

Regardless, Plaintiff has not pleaded any facts showing discriminatory intent, disparate treatment, or intentional discrimination, and therefore has stated no Equal Protection claim.

### D. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11.

Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff asserts that he had a protected right to file a grievance, and that he has been retaliated against so bad that it changed his parole date, he was subjected to strip-searches in front of female staff, and that the use of excessive force and the failure to provide medical care was retaliatory.

Plaintiff pleaded that his grievance regarding his cell move was filed on January 24, 2016, but also pleaded that the retaliation began when his personal property was seized on January 19, 2016. The Court cannot reasonably infer that the property seizure was retaliatory when it occurred before the protected conduct.

Plaintiff has also alleged strip searches in retaliation, but he has not identified any facts from which the Court can infer that the conduct was retaliatory. Plaintiff has not stated who performed the searches, and has not connected the officers to his protected conduct, nor has he alleged whether the strip searches reasonably advanced a legitimate correctional goal. Plaintiff also makes conclusory allegations of excessive force and the failure to provide medical care, but states no actual facts discussing who was involved, what occurred, or when it occurred. He has not connected specific officials to violations of his constitutional rights, nor shown their retaliatory intent. Therefore, the Court is unable to find any retaliation based on these assertions.

Regarding Lieutenant Iverson, Plaintiff has pleaded that after he filed his January 24, 2016 grievance, Iverson investigated the staff complaint against his own officers, and then on June 6, 2016, authored a false 115 RVR report in retaliation for the complaint. The RVR was false and

9

was based on fabricated evidence. Liberally construed, this is sufficient to state a claim for retaliation against Lieutenant Iverson. However, the Court notes that Plaintiff appears to plead that this RVR issue changed his parole date, and therefore the claim may be barred.

A prisoner cannot advance a claim if its success would necessarily imply the invalidity of a lawful conviction or sentence. Heck v. Humphrey, 512 U.S. 477, 487 (1994). In Heck, the Supreme Court held that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. In Edwards v. Balisok, 520 U.S. 641, 646 (1997), the Supreme Court extended this ruling to bar claims under § 1983 for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits. Therefore, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Here, as stated above, Plaintiff alleges that he was found guilty of a rules violation, which led to a change in his parole date. If success on Plaintiff's claim will necessarily result in speedier release because it will undermine the RVR, then his claim cannot proceed in a section 1983 action. If at most Plaintiff would receive a new eligibility review or consideration of a new parole application, his claim may proceed. Id. at 82.

**E.    Linkage**

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012)

(citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Plaintiff fails to link each individual Defendant to an affirmative action or omission giving rise to an alleged constitutional violation.

### F. Declaratory Judgment

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

### G. Injunctive Relief

Prisoners who have been released from prison or transferred to a different prison may not sue for injunctive relief because they would no longer benefit from having the injunction issued. See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (citing Preiser v. Newkirk, 422 U.S. 395, 402–03, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir.1 991); and Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986)). Because Plaintiff is no longer housed at the institution where the alleged violations occurred, he may not sue to enjoin those violations from recurring in the future. His claim for injunctive relief is moot, and should be dismissed.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court finds that Plaintiff has stated a cognizable claim for deliberate indifference to safety in violation of the Eight Amendment against Officers Hennesay and Odle, and for retaliation in violation of the First Amendment against Lieutenant Iverson. The latter claim may be subject to dismissal as pleaded, for the reasons explained above. The Court has also identified deficiencies in the complaint, also as explained above.

The Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the cognizable claim identified by the Court, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed only on his cognizable claim. The Court will then recommend to a district judge that this case only proceed on the claim set forth above, for the reasons explained in this order.

If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-89, 129 S. Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations admitted).

Plaintiff is also reminded that an amended complaint supersedes all prior complaints. Lacey, 693 F.3d at 927. Absent prior court approval, the amended pleading must be complete in itself without reference to any prior pleading. Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file either an amended complaint, or a notice of his intent to proceed upon the cognizable claim identified in this order; and

///
///
///
///
///

12

3. Plaintiff is warned that if he fails to comply with this order, the Court will recommend to the district judge that this action be dismissed for the failure to prosecute and the failure to comply with a court order.

IT IS SO ORDERED.

Dated: __**March 20, 2018**__         _____
UNITED STATES MAGISTRATE JUDGE